## STATE FARM MUT. AUTOMOBILE INS. CO. v. COUGHRAN. *

### No. 8330.

Circuit Court of Appeals, Ninth Circuit.

July 26, 1937.

*Writ of certiorari granted 58 S.Ct. 281, 82 L.Ed. ——.

240

Joseph A. Spray and F. Britton McConnell, both of Los Angeles, Cal., for appellant.

Parker & Stanbury and Raymond G. Stanbury, both of Los Angeles, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

Appellee having been injured in an automobile collision (automobile will be termed car herein) brought suit against R. O. Anthony and Helen B. Anthony charging negligence in driving of the car to Helen B. Anthony, wife of the registered owner. R. O. Anthony carried automobile insurance against such casualties in the appellant company. The appellant company, upon being advised of the accident, appeared under a nonwaiver agreement. Judgment was recovered by appellee against R. O. Anthony and Helen B. Anthony for $5,000, it not being paid execution was issued and returned unsatisfied. Suit was then prosecuted against the appellant insurance company and a trial by jury was waived, and the court after hearing the evidence and argument of the lawyers made and filed findings of fact and conclusions of law and entered judgment in favor of the appellee, to reverse which this appeal is prosecuted.

The court's attention is challenged to sixteen errors; all errors may be classified in a group of four:

First, is the judgment in the state court res judicata?

Second, does the evidence support the findings of fact?

Third, do the findings of fact support the judgment?

Fourth, do the findings require that judgment be entered in favor of defendant (appellant)?

As will subsequently appear, it is obvious that it is unnecessary to decide the first point in view of our conclusion with relation to the other points.

All errors are therefore comprehended within the groups denominated second, third, and fourth and will be considered together.

The trial court in finding III found: "That on or about the 16th day of June, 1934, and while said policy was in full force and effect, one Helen B. Anthony operated the Chevrolet automobile referred to in and covered by said policy of insurance, with the permission and consent of the assured, R. O. Anthony, and operated the same negligently so as to proximately cause an accident and injury to the person and property of the plaintiff, to his damage * * *." And in finding XII found: "With regard to the second, separate defense of defendant, the court finds that the said automobile at the time of the impact that resulted in the injury to the plaintiff was being jointly operated by Helen B. Anthony and Nancy Leidenacker * * *; that said Nancy Leidenacker was a minor * * *; that the assured had forbidden said minor, Nancy Leidenacker, to drive any motor vehicle or automobile of which he was the owner or which he controlled; and that the action of said Nancy Leidenacker on the day of the accident and at the time of the impact involved in this action were in disobedience of and contrary to the commands, orders and instructions of the assured, R. O. Anthony; that at the time of the accident, insofar as the propulsion of the vehicle was concerned, other than the means of direction, all instrumentalities of said automobile were being physically actuated by said minor, Nancy Leidenacker, with the acquiescence and knowledge of Helen B. Anthony and without any knowledge, acquiescence or consent on the part of the assured, R. O. Anthony; that the proximate and direct cause of the collision between the insured automobile and a truck * * * was the act of Helen B. Anthony in seizing the steering wheel of the automobile at and immediately preceding the moment of impact and collision."

The court found other findings.

"From the foregoing facts the court concludes as a matter of law that the plaintiff is entitled to have and recover of the defendant herein judgment * * *."

This court is bound by the facts found by the trial judge. 28 U.S.C.A. § 875. In finding III Helen B. Anthony operated the car negligently so as to proximately cause the accident, and injury to persons and property, and in finding XII that " * * * the said automobile at the time of the impact that resulted in the injury to the plaintiff, was being jointly operated by Helen B. Anthony and Nancy Leidenacker * * *." This finding that the car was jointly operated by Helen B. Anthony and the passenger minor is inconsistent with finding III that Helen B. Anthony operated the car. And to elucidate the truth, a review of the testimony is required. Justice requires as much. Neither party asked for a more specific finding.

The record, undisputed, discloses that Helen B. Anthony was custodian of the car in issue at the beginning of the drive in question, selected the course, and was behind the wheel and directed its movement and carried the minor as a passenger from school to her home; and when on the course the thirteen year old minor passenger, weighing 125 pounds, mentally and physically fit, "a clever driver," requested permission to drive, was permitted to sit behind the wheel, took charge of the operating mechanism of the car, and Mrs. Anthony sat on the seat beside her, and the only remark in evidence was, "you are a good driver," until the truck was overtaken and Mrs. Anthony told the minor to pass the truck and to increase the speed from 30 to 40 miles per hour. This remark shows that Mrs. Anthony used the passenger minor as her instrument in driving and the remark approves the course and speed, and that she was director of the trip, the driver of the car; that she was "master of the ship." Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650, 54 A.L.R. 845. How far the car had traveled after the minor passenger sat behind, and took hold of the wheel, before Mrs. Anthony directed passing the truck and increasing the speed from 30 to 40 miles per hour and

took the wheel and changed the course of the car and collided with the truck, is not shown. After the accident Helen B. Anthony again took the wheel. It is obvious that the driving and operating at no time was changed from Helen B. Anthony during the entire trip. To operate a car may be said to include driving, and which means selection of a course and series of acts to effect a purpose in moving the car, and as said in Miller v. Minn. & N. W. Ry. Co., 76 Iowa 655, 39 N.W. 188, 14 Am.St.Rep. 258, a right to control the movement; including the control of intermediate stops along the highway and of the car at rest and the speed. All these functions rested upon and were exercised by the licensed operator, Mrs. Anthony. The licensed operator of the car was in control and did personally direct the car movement and did physically change the course of the car and ran it into the truck. This was the sole and proximate cause of the accident and without which the accident would not have occurred. The conclusion in finding XII that the passenger minor was a joint driver is not sustained, and has no weight as against finding III, a finding of positive ultimate fact that Helen B. Anthony was the driver of the car. O'Connell v. N. J. Fidelity, etc., Co., 235 N.Y. 583, 139 N.E. 744.

A person may be operator or driver of the car even though not personally in charge of the mechanical operating device.

"The clear implication is that, if the legal user at the time be present in the car, still 'the director of the enterprise,' still 'the master of the ship,' the operation of the car is his operation, though the hands at the wheel are those of a substitute." Arcara v. Moresse, 258 N.Y. 211, 179 N. E. 389, 390.

This is not new doctrine, but comes from horse and cart days, when Lord Abinger (1835) in the case of Booth v. Mister, English Report (full reprint) vol. 173, Nisi Prius Book 4, p. 30, vol. 7 C. & P. 66, where defendant was sued for negligent driving of his cart by his servant who struck against a cabriolet in which plaintiff was riding and was injured, said in substance: *The substitute who held the reins was the mere instrument of the driver, who sat beside him on the box.*

The passenger minor was the mere instrument of the driver, Mrs. Anthony, in driving the car while sitting behind the wheel.

Exemptions claimed in the policy are: (d) "Unless the said automobile is being operated by the assured, his paid driver, members of his immediate family, or persons acting under the direction of the assured." And (e) "Caused while the said automobile is being driven or operated by any person whatsoever either under the influence of liquor or drugs or violating any law or ordinance as to age or driving license." And another under "Misrepresentation," (a) "This entire policy shall be void if the assured or his agent has concealed or misrepresented in writing or otherwise any *material fact* or circumstance concerning this insurance or the subject thereof, or if the assured or his agent shall make any attempt to defraud the company either before or after the loss." (Italics supplied.)

The car "was insured against legal liability imposed upon the assured resulting solely and directly by an accident by reason of ownership, maintenance or use of the automobile," subject to exceptions above noted.

Section 58(a), California Vehicle Act (St.1923, p. 531, as amended by Stat.1927, p. 1427), makes it unlawful for any person to operate automobiles unless licensed as an operator, and section 64(a), act supra (St.1923, p. 532, as amended by Stat. 1931, p. 2108), provides an operator's license shall not be issued to any person under 16 (with some exceptions not important here). Section 18, act supra (Stat. 1923, p. 519), defines an "operator" as "every person who drives, operates or is in *actual physical control* of a motor vehicle upon a public highway." (Italics supplied.) Section 76 of the California Vehicle act supra (St.1923, p. 536), makes it an offense for the operator of a car to permit a minor to drive the same.

The sections of the statutes referred to have no operative effect since the car was operated by Helen B. Anthony within the purview of the insurance policy and the state law. She was a licensed operator and a member of the insured's family.

The court found that R. O. Anthony had forbidden the minor from driving said car and whatever she did was "in disobedience of and contrary to the commands, orders and instructions of the assured, R. O. An-

thony * * *." That the proximate cause of the collision was the act of Helen B. Anthony in seizing the steering wheel and turning the car to the right, causing the collision with the truck.

These exemptions, however, by the interchangeable use of the words "operated" and "driven," which we believe mean actual control, create possibly two viewpoints of approach or interpretation, and as stated by both parties in their briefs, *"the question presented was a simple matter of interpretation of contract."* (Italics supplied.) In such event the interpretation most liberal in favor of the assured and strict against the insurer must be followed. Pacific Heating, etc., Co. v. Williamsburgh, etc., Ins. Co., 158 Cal. 367, 111 P. 4. In Thames & Mersey M. Ins. Co. v. Pacific Creosoting Co., 223 F. 561, at page 567 (C. C.A.9) the court said: "It is a fundamental rule in the law of insurance that a stipulation in a policy which is in the nature of an exception to the liability of the insurer must be construed strictly against it, and that words of exception in a policy, if doubtful, are to be construed most strongly against the party for whose benefit they were intended."

The Supreme Court in Liverpool & London & Globe Ins. Co. v. Kearney, 180 U.S. 132, at page 136, 21 S.Ct. 326, 328, 45 L.Ed. 460, said: "To the general rule there is an apparent exception in the case of contracts of insurance, namely, that where a policy of insurance is so framed as to leave room for two constructions the words used should be interpreted most strongly against the insurer."

Both the *insurance* clause and the *exemption* clauses must be strictly construed against the insurer. In thus interpreting these exemptions it appears clear exemption (e) is controlled by exemption (d) as to operator of this car, and Mrs. Anthony was the operator and driver in fact within the express provisions of the policy. The utmost that may be said in appellant's behalf is that the minor was a joint operator and joint operator is not an exemption from liability.

An insurance policy having a clear and unequivocal guaranty against accidental loss will not be limited or controlled by later doubtful exemptions. In re Emily Pixley Shaw, 198 Cal. 352, 246 P. 48.

On the co-operative condition in the policy the court found: "* * * that all conditions precedent to be performed upon the part of the assured, R. O. Anthony, under the terms of said policy of insurance so far as they affect this plaintiff (appellee), were fully performed according to the terms of said policy * * *; that at no time did the assured, R. O. Anthony, authorize, direct or instruct, or in any manner, expressly or impliedly, authorize Helen B. Anthony to make any untrue statement or statements, or untrue or false representations to the defendant or its agent or employees. That the assured at all times fully and fairly, as far as he knew or had means of knowledge, disclosed the truth concerning the accident in question and that nothing said, done or authorized by the said assured, R. O. Anthony, misled or prejudiced the defendant company in any manner or particular. That no statements or representations or concealments of Helen B. Anthony, with respect to the accident or the identity of the driver or operator, were in any manner participated in or ratified by the assured, R. O. Anthony * * *. That prior to the trial of the action in the State court herein referred to, the defendant (appellant), * * * had knowledge of the fact that another person, one Nancy Leidenacker, was also occupying the driver's seat of the insured automobile at the time of the accident and of all other facts and circumstances concerning the identity of the persons occupying said automobile and their positions therein, and all other facts and circumstances regarding said accident. * * *. The court finds that no prejudice resulted to the defendant from any of the conduct herein found to have taken place by the said Helen B. Anthony * * *."

The court further found that it is not true that the assured failed to co-operate, as required by the terms of said policy of insurance, and make a fair and frank disclosure of the facts reasonably demanded to enable it to determine its defense in the state court action; and that the assured did not commit or attempt to commit any fraud upon the defendant (appellant); and that the assured did furnish to the defendant a true and fair statement of the circumstances as known to him and did at all times co-operate with the defendant (appellant). No findings were requested by appellant. The finding elucidated by the evidence does sustain the finding III as the ultimate fact as to operator of the car herein indicated (and finding XII alone shows

244

operation of the car by Helen B. Anthony) and the general conclusion of law is sustained by the finding and all sustain the judgment.

Affirmed.

WILBUR, Circuit Judge (dissenting).

The appellee, James D. Coughran, was injured as a result of the operation of an automobile belonging to R. O. Anthony, to whom the appellant has issued a policy of insurance, which under the terms of the policy and under the law of California gave a right of action thereon to a person so injured in the event the insured was bankrupt or insolvent. Calif.Stats.1919, c. 367, p. 776. This action is of that nature. The appellant interposed several defenses: It denied that the appellee owned the judgment, and that the insured was insolvent. It alleged that the insured had not performed all the terms of the policy because at the time of the accident the automobile was not being operated by the insured or wife or by anyone with the consent and permission of the insured, and upon the further ground that the insured and his wife, Helen B. Anthony, had made false and fraudulent representations to the appellant as to who was driving and operating the car at the time of the accident, and that the insured and Helen B. Anthony failed to cooperate with the appellant in the defense of this action, as required by the policy. In a second separate defense it was alleged that the automobile at the time of the accident was being driven and operated by a person in violation of the law of the State of California as to age and driver's license, and that the driver of the car was a female minor, age thirteen years. In a third defense appellant alleged the failure of the insured and Helen B. Anthony to co-operate in the defense of the action brought against the insured. In a fourth defense appellant alleged misrepresentations made by the insured and Helen B. Anthony to the appellant as to who was driving the car at the time of the accident. In a fifth defense it was alleged that the defense of the action against the insured was undertaken solely under a nonwaiver agreement, and that appellant had informed the insured that it was not liable under the policy. In a sixth defense appellant alleged that the policy was void because the insured and Helen B. Anthony had concealed or misrepresented in writing material facts concerning the action, and

in a seventh defense that under another provision of the policy they had failed to co-operate in the defense of the action brought against them by failing to furnish a true statement of the facts and circumstances surrounding the happening of the accident. The cause was tried before the court without a jury, the jury having been waived, and the court made its findings of fact and conclusions of law and rendered judgment in favor of the appellee and against appellant for the full amount of the claim ($5,082.55) with interest and costs. No findings or conclusions of law were presented to the court for ruling thereon and no motion was made for judgment at the conclusion of the testimony. The appellant makes sixteen assignments of error. Several of these assignments are predicated upon the failure of the court to make certain findings (assignments Nos. 1, 2, 3, 6, 7, 8, 9, 10, and 11). They present no question for review as findings were not presented to the trial court for ruling thereon. Assignments 12, 13, and 16 raise no questions for review. These assignments are either too general or are not based upon any ruling. They are as follows:

"XII. That the court erred in rendering judgment in favor of the plaintiff and appellee, and against the defendant and appellant, and the same is not supported by the evidence.

"XIII. That the evidence does not support the findings of fact. * * *

"XVI. That the court erred in holding that the policy of insurance which was the subject matter of the action, insured liability arising out of the accident in question."

The only question presented by the record is whether or not the findings support the judgment. This is presented in various ways in the assignments of error. (Assignments Nos. 4, 5, 14, and 15). The principal contentions of the appellant revolve around the claim that at the time of the accident the machine was being driven and operated by a thirteen year old girl in violation of the terms of the policy and of the statutes of California. The insurance policy is made a part of the findings. Under the heading "Terms and Conditions Forming a Part of this Policy," and the subheading "(1) Risks not Assumed by this Company," we have the following:

"The company shall not be liable and no liability or obligation of any kind shall at-

tach to the company for losses or damage: (A) * * * (D) Unless the said automobile is being operated by the assured, his paid driver, members of his immediate family, or persons acting under the direction of the assured; * * *

"(E) Caused while the said automobile is being operated by any person whatsoever either under the influence of liquor or drugs or violating any law or ordinance as to age or driving license. * * *"

The Motor Vehicle Act of California (Stats.1927, p. 1427, § 58(a) in effect at the time of the accident, provided: "It shall be unlawful for any person to drive a motor vehicle upon any public highway in this state, whether as an operator or a chauffeur, unless such person has been licensed as an operator or chauffeur."

The Motor Vehicle Act of California (Stats.1931, p. 2108, § 64(a), c. 1026) provided: "An operator's license shall not be issued to any person under the age of sixteen years." [Except under circumstances not involved here].

The Motor Vehicle Act of California (Stats.1923, p. 536, § 76) provided: "No person shall authorize or knowingly permit a motor vehicle owned by him or under his control, to be driven by any person who has no legal right to do so or in violation of the provisions of this act."

Sections 1 and 18 of the California Motor Vehicle Act (Stats.1923, pp. 518, 519) defined an "operator" within the meaning of the act to be, "Every person who drives, operates or is in actual physical control of a motor vehicle upon a public highway." It may be conceded that at the time of the accident the automobile of the insured was in charge of his wife, a member of his family, and consequently that he was insured against liability within the meaning of subdivision (D) of the policy above quoted. This much is conceded by the appellant, and it is clear that the adjudication in the tort action that Mrs. Helen B. Anthony was operating the car is binding upon the appellant. The difficulty arises by reason of provision (E) above quoted.

The findings are not entirely consistent. The third finding is that the automobile was being operated by Helen B. Anthony so negligently as to proximately cause the accident. In dealing with the second defense, that the automobile was being driven by a thirteen year old girl, Nancy Leidenacker, the court found that the car at the time of the impact which resulted in the injury to the appellee was being jointly operated by Helen B. Anthony and Nancy Leidendeker. This is followed by a detailed statement as to how the car was being operated, namely: " * * * that at the time of the accident, insofar as the propulsion of the vehicle was concerned, other than the means of direction, all instrumentalities of said automobile were being physically actuated by said minor Nancy Leidendeker, with the acquiescence and knowledge of Helen B. Anthony and without any knowledge, acquiescence or consent on the part of the assured, R. O. Anthony; that the proximate and direct cause of the collision between the insured automobile and a truck owned by San Pedro Commercial Company was the act of Helen B. Anthony in seizing the steering wheel of the automobile at and immediately preceding the moment of impact and collision."

In view of the statutory definition of what constitutes an operator, namely, one in actual physical control of a motor vehicle (Cal. Motor Vehicle Act, §§ 1, 18, supra), and in view of the purpose of the law to protect the public from the lack of judgment and skill of a young child, it seems clear that the child was driving the automobile in the case at bar within the meaning of that term as defined in the statutes of California and, consequently, was violating the law of California, and that the wife also, who in a legal sense had control of the car, was violating the statute by permitting the child to operate the car. Therefore, whether we consider the question from the standpoint of the action of the child or of the wife the car was operated in violation of law as to age and driving license. If it was operated in violation of such a law the policy expressly provides that there shall be no liability on the part of the Insurance Company. If we assume, as the court found, that the car was being jointly operated and that the child had control of some part of the driving mechanism, and the wife had control of another portion, it is still true that each was violating the provisions of the law—the child by driving the car and the wife by permitting her to do so.

Turning to the question of the effect in this action of the judgment in the tort action, wherein a judgment was secured by the appellee against the insured R. O. Anthony and his wife, Helen B. Anthony, the

judgment roll is not before us; hence, the effect of this judgment must be determined from the findings herein in relation thereto, namely, that the appellee brought an action against R. O. Anthony and Helen B. Anthony and that the defense of that action was conducted under a nonwaiver agreement by the appellant, that the complaint in that action alleged that Helen B. Anthony was the driver of the automobile insured at the time of the accident, and that judgment was recovered against R. O. Anthony and Helen B. Anthony. Under the law of California a judgment secured against an insured in such an action is conclusive against the Insurance Company which has undertaken the defense of the action on behalf of the insured. Parra v. Traeger, 214 Cal. 535, 6ˈ P.(2d) 941; Cal. Civ.Code, § 2778. The judgment, therefore, is conclusive as to the amount of the damages suffered by the appellee, and as to the liability of R. O. Anthony and Helen B. Anthony. Lamb v. Belt Cas. Co., 3 Cal. App.(2d) 624, 40 P.(2d) 311.

The tort action brought by the injured person against the insured did not involve any defenses which the Insurance Company may have by reason of the terms of the policy. See Bryson v. International Ind. Co., 88 Cal.App. 100, 262 P. 790. Although by the terms of the policy the Insurance Company was not liable if the car was being driven by a person who in so doing was violating the law, it could not litigate its exemption from liability under the policy in the tort action, because under the law of California an allegation by the defendants that the car was being driven by a thirteen year old child jointly with and with the consent of Helen B. Anthony, in violation of law, would constitute an admission of negligence by the defendant Helen B. Anthony. And it would have been no defense in the tort action for R. O. Anthony to have alleged that the car was jointly driven by Helen B. Anthony and the minor although if the car had been wholly operated by the thirteen year old minor in violation of his orders and instruction he would not have been personally liable. It follows that the question of whether or not the car was jointly driven by Mrs. Anthony and the child at the time of the accident was not involved in or litigated in the tort action. In that action it was alleged and the court found that the car was being operated by Mrs. Anthony. There may be an element of inconsistency in saying that although the court, in the tort action, found that Mrs. Anthony was driving the car at the time of the accident, in this action the Insurance Company can rely upon the claim that the car was also driven by the thirteen year old girl. But inasmuch as the question of joint driving, in so far as it involved a defense of appellant under the policy would be entirely foreign to the tort action and could not properly be litigated therein and was not so litigated, the judgment in the tort action does not prevent the Insurance Company from advancing the defense it now interposes. See Bryson v. International Ind. Co., supra; Rogers v. Detroit Automobile Inter-Ins. Exch., 275 Mich. 374, 266 N.W. 386; Baxter v. Central West Cas. Co., 186 Wash. 459, 58 P.(2d) 835.

I conclude that the finding that the car was jointly operated by Mrs. Anthony and the child is a conclusion of fact binding upon us and that this conclusion of fact does not support the conclusion of law as to liability on the part of the Insurance Company, nor support the judgment.

With reference to the defenses of concealment and misrepresentations and failure of co-operation, appellant's argument is that the wife in making the report of the accident and in making such representations as she made to the Insurance Company to the effect that she was driving the car was acting as agent of the husband in making such representations. It is sufficient to say that that question is foreclosed by the findings of the court on this question in favor of appellee. The finding that the person did not make representations is a finding that he did not make such representations through an agent.

The judgment should be reversed, and the court should be directed to enter judgment on the findings in favor of the appellant.